## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HARVARD IMMIGRATION AND REFUGEE
CLINICAL PROGRAM,
6 Everett Street, Suite 3103 (WCC),
Cambridge, MA 02138,

                        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
245 Murray Lane, SW
Washington, DC 20528,

and

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT,
500 12th Street, SW
Washington, DC 20536,

                        Defendants.

Docket No.


**COMPLAINT**

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Harvard Immigration and Refugee Clinical Program ("HIRC"), by and through its undersigned attorneys, complains against Defendants U.S. Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") as follows:

### INTRODUCTION

1.      HIRC brings this action against Defendants DHS and its component ICE to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and produce requested records concerning the use of solitary confinement in immigration detention.

1

2.     The U.S. government has held immigrants in solitary confinement for years, under multiple presidential administrations.[1] Yet, there is little transparency about the numbers of immigrants held in solitary confinement, the process of placing immigrants in solitary confinement, and any safeguards put in place to address mental health or other concerns.

3.     Transparency about the use of solitary confinement in immigration detention promotes accountability for government actions and ensures that the safeguards mandated by law, policy, and regulation are properly implemented at facilities across the United States. Absent information about these practices, the public participation and collaboration necessary to safeguard against abuse of the most vulnerable are impossible to achieve.

4.     As further alleged below, for four years, HIRC has sought information from Defendants about the use and subsequent impact of solitary confinement on individuals held in civil immigration detention. Specifically, since November 21, 2017, HIRC has sought disclosure of records from DHS's Office of the Inspector General ("OIG") and Office for Civil Rights and Civil Liberties ("CRCL") related to the detention of immigrants in solitary confinement (the "OIG Request" and the "CRCL Request", collectively the OIG and CRCL FOIA Request). Since November 30, 2017, HIRC has sought the disclosure of three sets of records relating to immigrants placed into solitary confinement by ICE (the "ICE FOIA Requests"). And since December 21, 2017, HIRC has sought disclosure of records related to complaints and/or claims filed with and/or investigations by the U.S. Office of Special Counsel ("OSC") related to the use and substantive impact of segregation of civil immigration detainees (the "OSC FOIA Request").

5.     Despite the clear statutory requirement that an agency respond to a FOIA Request within 20 days, and despite HIRC's repeated inquiries, Defendants DHS and ICE have failed to

---

[1] Ian Urbina & Catherine Rentz, *Immigrants Held in Solitary Cells, Often for Weeks*, N.Y. Times (Mar. 23, 2013), https://www.nytimes.com/2013/03/24/us/immigrants-held-in-solitary-cells-often-for-weeks.html.

produce any documentation at all with regard to the ICE FOIA Requests and the CRCL Request, and Defendant DHS has produced only incomplete documentation with regard to the OIG Request. Further, both Defendants ICE and DHS have yet to produce responsive records referred to them by other agencies in relation to the OIG Request and the OSC FOIA Request, respectively, within the required time limits. Defendants have thus failed to comply with the requirements of FOIA.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

7.    Because Defendants failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(4)(B) and HIRC filed timely appeals, HIRC has exhausted its administrative remedies and is entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

8.    Venue is proper in the District of Massachusetts under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. 1391(e), including because it is the district in which HIRC has its principal place of business.

## PARTIES

9.    Plaintiff HIRC is a clinical program at Harvard Law School, with its principal place of business in Cambridge, Massachusetts. Founded in 1984, HIRC has supervised thousands of Harvard Law School students representing individuals seeking asylum and other forms of humanitarian protection in the United States. HIRC's mission is to advocate for immigrant justice, and it also seeks to challenge the increasing conflation of the criminal law system and the immigration system—issues directly pertinent to the solitary confinement concerns at issue in the OIG, CRCL and ICE FOIA Requests.

3

10.    Defendant DHS is a U.S. agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 551(1).

11.    Defendant ICE is a component of Defendant DHS.

12.    DHS OIG is tasked with driving "transformative change" to "improve DHS programs and operations and promote a safer homeland," and DHS OIG's mission is "[t]o provide independent oversight and promote excellence, integrity, and accountability within DHS."[2]

13.    A critical responsibility of DHS CRCL is "investigating civil rights and civil liberties complaints filed by the public regarding [DHS] policies or activities, or actions taken by [DHS] personnel."[3]

14.    DHS and ICE are in possession, custody, and control of the requested records and are responsible for responding to HIRC's OIG, CRCL and ICE FOIA Requests and the referred OSC FOIA Request records.

## STATUTORY FRAMEWORK

15.    FOIA, 5 U.S.C. § 552, mandates disclosure of records held by a federal agency, in response to a request for such records by a member of the public, unless records fall within certain narrow statutory exemptions.

16.    As the Supreme Court has recognized, "the basic purpose of [FOIA] is 'to open agency action to the light of public scrutiny.'" *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). Scrutiny of otherwise opaque government actions, such as those affecting the most vulnerable populations in our country, improves public understanding of important issues. In short, transparency is necessary for a vibrant and functioning democracy.

---

[2] DHS, Office of Inspector General, *About Us*, *available at* https://www.oig.dhs.gov/about.
[3] DHS, Office of Civil Rights and Civil Liberties, https://www.dhs.gov/office-civil-rights-and-civil-liberties.

4

17.     Accordingly, HIRC submitted its OIG, CRCL, ICE, and OSC FOIA Requests to educate the public on the federal government's policies and instructions regarding the use of solitary confinement in civil immigration detention.

## FACTUAL ALLEGATIONS

### A.     BACKGROUND

18.     It is well-established that solitary confinement, even for relatively short periods of time, can cause serious psychological and physical damage. Yet, noncitizens held in immigration detention are often subjected to solitary confinement, including disciplinary or administrative segregation, without regard for these medical and mental health tolls.[4]

19.     The experience of solitary confinement can be acutely traumatizing for many, particularly those who have a history of "torture and abuse, as is often the case with many immigration and national security detainees."[5] Prolonged isolation can lead to mental health issues or severely exacerbate pre-existing mental illness.[6]

20.     In light of the harmful effects of segregation, ICE's own Performance-Based National Detention Standards ("PBNDS"), issued in 2008, acknowledged the severity of solitary confinement, listing it as a potential punishment only for the three most severe categories of offenses[7] and generally listing it as the most severe punishment available.[8]

---

[4] Homeland Security Advisory Council, *Report of the Subcommittee on Privatized Immigration Detention Facilities*, Dec. 1, 2016, *available at*
https://www.dhs.gov/sites/default/files/publications/DHS%20HSAC%20PIDF%20Final%20Report.pdf.
[5] Physicians for Human Rights, *Solitary Confinement in the U.S. Detention System*, April 2013, *available at*
https://s3.amazonaws.com/PHR_Reports/Solitary-Confinement-April-2013-full.pdf.
[6] *Id.*
[7] *See* ICE, Performance-Based National Detention Standards § 3.19 A-1, A-3, A-5 (2008), *available at*
https://www.ice.gov/doclib/dro/detention-standards/pdf/disciplinary_system.pdf.
[8] *See id.* (V)(K)(1) ("Sanctions range from the withholding of privilege(s) to segregation.").

21.     Revised PBNDS issued in 2011 also emphasize that solitary confinement of vulnerable populations should be used as "a last resort" and "when no other viable housing options exist."[9] Still, CRCL received approximately 745 public complaints filed against ICE policies and practices, and actions carried out by ICE personnel between 2011 and 2014.[10]

22.     In order to monitor the use of solitary confinement, ICE issued a directive in September 2013 mandating the systematic review of its use for immigrants detained by ICE (the "ICE Segregation Directive).[11] The ICE Segregation Directive states that "[p]lacement in segregation should occur only when necessary and in compliance with applicable detention standards."[12]

23.     The ICE Segregation Directive established safeguards to ensure that detained immigrants with medical or mental illness are not inappropriately placed in solitary confinement. Indeed, per the directive "detainees shall be removed from segregation if the [ICE Health Services Corps] determines that the segregation placement has resulted in deterioration of the detainee's medical or mental health."[13]

24.     On September 19, 2017, a report was published by OIG which investigated ICE field office compliance with policies and standards, including the ICE Segregation Directive, related to the segregation of detainees living with mental health issues (the "OIG Report").[14]

---

[9] ICE, Performance-Based National Detention Standards, § 2.12 (V)(A)(1)(c) (2011). *See also* 6 C.F.R. § 115.43(b) ("Use of administrative segregation by facilities to protect detainees vulnerable to sexual abuse or assault shall be restricted to those instances where reasonable efforts have been made to provide appropriate housing and shall be made for the last amount of time practicable, and when no other viable housing options exist, as a last resort.").
[10] CRCL, Data on Complaints Received, available at https://www.dhs.gov/data-complaints-received.
[11] ICE Directive 11065.1, Review of the Use of Segregation for ICE Detainees, DHS (2013), *available at* https://www.ice.gov/doclib/detention-reform/pdf/segregation_directive.pdf [hereinafter "ICE Segregation Directive"].
[12] ICE Segregation Directive at § 2.
[13] *Id.* at § 5.2 (5) (a).
[14] U.S. Department of Homeland Security, Office of Inspector General, ICE Field Offices Need to Improve Compliance with Oversight Requirements for Segregation of Detainees with Medical Health Conditions, September 29, 2017, available at https://www.oig.dhs.gov/sites/default/files/assets/2017-11/OIG-17-119-Sep17.pdf.

25.     The OIG Report contained three evaluation goals: (1) to measure the extent to which "facility personnel follow ICE guidance for documenting segregation decisions"; (2) to measure the extent to which "facilities report segregation data accurately and promptly"; and (3) to assess whether "ICE field offices follow procedures for reviewing segregation decisions about detainees with mental health conditions."[15] The OIG Report found that the ICE field offices reviewed "did not record and promptly report all instances of segregation to ICE headquarters, nor did their system properly reflect all required reviews of ongoing segregation cases per ICE guidance. In addition, ICE does not regularly compare segregation data in the electronic management system with information at detention facilities to assess the accuracy and reliability of data in the system."[16]

## B.     OIG AND CRCL FOIA REQUEST

### 1.     Background

26.     On November 21, 2017, HIRC submitted the OIG and CRCL FOIA Request to ICE. The request contained two parts.

27.     Part A of the request—the OIG Request—sought the disclosure of records pertaining to the OIG Report including:

- The disclosure of records submitted by ICE to the OIG between July 2016 and January 2017 pertaining to detainees with mental health disabilities placed in segregated housing;
- The disclosure of records produced in accordance with the ICE Segregation Directive and the "Expanded Evidence for Submitting Segregation Notifications" issued by ICE on January 6, 2017 (referred to in the OIG Report); and
- The disclosure of the aforementioned records for ICE detention facilities and facilities ICE has agreements with or is contracting with for the purpose of holding immigration detainees, including Service Processing Centers, Contract Detention Facilities, and Intergovernmental Service Agreement Facilities in the state of Massachusetts between July 2016 and October 2017.[17]

---

[15] *Id.* at 15.
[16] *Id* at 14–15.
[17] See Exhibit A for a detailed list of requested records.

28.     Part B of the request—the CRCL Request—sought the disclosure of the

following:

- Records submitted by ICE to DHS CRCL in response to the primary allegations listed in Table 1 below[18] as they relate to the segregation of detainees living with mental health conditions;
- Records within ICE possession related to the outcomes of the CRCL investigation into the primary allegations listed in Table 1;
- Records submitted by ICE to DHS CRCL in response to the primary allegations listed in Table 1 for the period between January 2015 and October 2017; and
- Records within ICE possession related to the outcomes of the CRCL investigation into the primary allegations listed in Table 1 for the period between January 2015 and October 2017.

**Table 1 – U.S. Immigration and Customs Enforcement (ICE) Complaints Received by CRCL[19]**

| Primary Allegation | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| Abuse of Authority | 6 | 10 | 7 | 3 |
| Conditions of Detention | 61 | 50 | 26 | 23 |
| Disability Accommodation | 0 | 0 | 3 | 1 |
| Discrimination/Profiling | 13 | 5 | 7 | 13 |
| Due Process | 9 | 3 | 2 | 11 |
| Excessive Force | 5 | 17 | 15 | 19 |
| Legal Access | 2 | 6 | 2 | 11 |
| Medical/Mental Health Care | 42 | 61 | 99 | 112 |
| Sexual Assault/Abuse | 3 | 6 | 6 | 8 |
| Retained by DHS Office of Inspector General | 3 | 0 | 4 | 1 |
| **Total** | **144** | **158** | **171** | **202** |

29.     A true and accurate copy of the OIG and CRCL FOIA Request is attached as

Exhibit A.

30.     On February 21, 2018, ICE notified HIRC that ICE had received the OIG and

CRCL FOIA Request, containing Part A (the OIG Request) and Part B (the CRCL Request) and

---

[18] Table 1 includes a subset of the 745 complaints received by CRCL filed against ICE policies and practices, and actions carried out by ICE personnel between 2011 and 2014. CRCL, Data on Complaints Received, available at https://www.dhs.gov/data-complaints-received.
[19] *Id.*

assigned the reference number 2018-ICFO-20740. ICE invoked a 10-day extension and granted

HIRC's fee waiver request. [Exhibit B].

31.    On February 21, 2018, ICE also determined that the OIG and CRCL FOIA

Request was under the purview of the DHS OIG and DHS CRCL and informed HIRC that ICE

had referred the relevant parts of the OIG and CRCL FOIA Request to the respective FOIA

Officers—Part A (the OIG Request) to DHS OIG and Part B (the CRCL Request) to DHS

CRCL. [Exhibit C]. However, instead of referring the CRCL Request to DHS CRCL, ICE

mistakenly referred it to the DHS Privacy Office.

32.    On February 23, 2018, the DHS Privacy Office notified HIRC that ICE had

withdrawn the transfer of the CRCL Request to the DHS Privacy Office and that ICE had

informed the DHS Privacy Office that ICE was "the proper office to search for these records."

[Exhibit D].

### 2.    Defendants' Failure to Comply with FOIA Requirements

#### i.  ICE's Failure to Respond to the CRCL Request

33.    On August 10, 2018, HIRC emailed ICE requesting an update on the status of the

OIG and CRCL FOIA Request, containing both the CRCL Request and the OIG Request.

[Exhibit E].

34.    On November 21, 2018, ICE notified HIRC that "the appropriate component of

DHS" had been queried for records. The correspondence further stated that any responsive

records would be reviewed for determination of releasability. This was the last communication

that HIRC received from ICE in relation to the OIG and CRCL FOIA Request. [Exhibit F].

35.    It does not appear that ICE ever referred the CRCL Request to DHS CRCL, as

ICE initially purported to do. According to ICE's February 23, 2018 communication with the

DHS Privacy Office, ICE "is the proper office to search for these records" and appears to have custody of the requested records.

36.     In relation to the CRCL Request, ICE has still not provided HIRC with any responsive records.

### ii. DHS's Improper Withholding of Responsive Records to the OIG Request

37.     On December 10, 2018, DHS OIG provided HIRC with a response to the OIG Request. The response included 1 page released in full, 29 pages released in part, and 3 pages withheld in full. The exemptions cited for withholding records and portions of records were 5 U.S.C. §§ 552(b)(5), (b)(6), and (b)(7)(C). DHS OIG also referred 221 pages back to ICE to process and respond directly to HIRC.

38.     A true and accurate copy of the DHS OIG Response is attached as Exhibit G.

39.     The 30 pages released in full or in part by DHS OIG include email correspondence about scheduling site visits at the Buffalo Field Office and Buffalo Service Processing Center and three reports related to those site visits investigating the use of segregation for ICE detainees with mental health conditions. The email correspondence contains references to various relevant attachments, yet none of the attachments were released to HIRC. Because ICE has yet to respond to HIRC in relation to the 221 pages that were referred back to ICE for direct processing, HIRC cannot be sure that these attachments are contained in the pages referred to ICE.

40.     Further, DHS has not provided HIRC with the necessary explanation for withholding in full 3 pages of responsive records and withholding in part 29 pages of responsive records. DHS has simply asserted that the records fall under the three exemptions cited above without any further explanation.

### iii.   ICE's Failure Respond to the OIG Request Referral

41.     As noted above, on December 10, 2018, DHS OIG provided HIRC with a response to the OIG Request.

42.     As part of its response, DHS OIG referred 221 pages back to ICE to process and respond to the Plaintiff directly. DHS OIG assigned No. 2018-IGFO-00072 to the OIG Request.

43.     ICE has not provided a response to HIRC in relation to the referred pages of the OIG Request.

### 3.     OIG and CRCL FOIA Request Appeals

44.     On April 1, 2019, HIRC submitted an administrative appeal to DHS OIG in relation to the OIG and CRCL FOIA Request, which was received by DHS OIG's Information Law and Disclosure Division ("ILD") on April 10, 2019.

45.     A true and accurate copy of HIRC's appeal to DHS OIG is attached as Exhibit H.

46.     On April 1, 2020, ILD denied HIRC's appeal and affirmed DHS OIG's December 10, 2018 response. ILD also determined that DHS OIG had conducted an adequate records search.

47.     ILD noted that of the 254 relevant pages of records located by DHS OIG, "DHS OIG referred 221 of them to ICE, as the originators of the records. As these are not DHS OIG records, DHS OIG cannot process them for release under FOIA."

48.     A true and accurate copy of ILD's response to HIRC's appeal is attached as Exhibit I.

49.     On April 1, 2019, HIRC submitted an administrative appeal in relation to the OIG and CRCL FOIA Request to ICE's Office of Principal Legal Advisor. As relevant here, the appeal challenged ICE's lack of response and argued that ICE was responsible for responding to the Request.

11

50.     A true and accurate copy of HIRC's appeal to ICE in relation to the OIG and CRCL FOIA Request is attached as Exhibit J.

51.     As of the date of this complaint—more than 2 years after the appeal was filed—HIRC has not received any communication from ICE in relation to the OIG and CRCL FOIA Request appeal.

52.     Specifically, HIRC has not received any communications or records from ICE in relation to the 221 pages responsive to the OIG Request that were referred back to ICE by DHS OIG for direct response to HIRC, nor has HIRC received any records from ICE that are responsive to the CRCL Request, even though ICE acknowledged in its letter to the DHS Privacy Office that ICE was the proper component to search for the requested records and had tasked its program offices to do so.

**C.     ICE FOIA REQUESTS**

**1.     Background**

53.     On November 30, 2017, HIRC submitted the three ICE FOIA Requests, seeking three groups of requested records.

54.     True and accurate copies of the three ICE FOIA Requests are attached as Exhibit K.

55.     The FOIA Requests to ICE ("ICE FOIA Request 1," "ICE FOIA Request 2," and "ICE FOIA Request 3") sought, for the period beginning September 4, 2013 to the present, records regarding use of segregation for immigration detainees within ICE detention facilities and facilities ICE has agreements with or is contracting with for the purpose of holding immigration detainees, including Service Processing Centers, Contract Detention Facilities, and Intergovernmental Service Agreement Facilities nationally and in the state of Massachusetts.

56.     ICE FOIA Request 1 sought information related to extended solitary confinement, disability status, and detainees given heightened attention because of mental health concerns, from September 4, 2013 to the present.[20] ICE FOIA Request 1 in particular sought records and/or data documenting any changes in the provision of medical and mental health care in solitary confinement, from January 1, 2017 to the present, in the state of Massachusetts.[21]

57.     ICE FOIA Request 2 sought various documents created, collected, received, or disseminated by ICE personnel regarding solitary confinement, as well as findings compiled by ICE.[22] In particular, ICE FOIA Request 2 sought reports, records, and other documents created

---

[20] These included:
•Records, data, and/or reports regarding extended segregation placements
•Records, data, and/or reports collected by or pertaining to the operations and responsibilities of ICE Health Services Corps in ICE detention facilities and ICE contract detention facilities, including employees in county jails with agreements with ICE
•Records, data, and/or reports related to suitable accommodations for detainees with disabilities, medical or mental disabilities
•Records, data, and/or reports related to forensic assessments of competency for detainees with disabilities
•For detainees placed on mental health watch (or any similar terms indicating heightened attention because of mental health concerns), length of time on such watch
[21] These included:
•The use of segregation in immigration detention by facility by month
•The number of health care providers employed in immigration detention facilities by month
•The amount and source of funding for medical and mental health care and staff in immigration detention facilities by month
•The number of visits by medical and mental health care providers to immigration detainees generally
•The number of visits by medical and mental health care providers to immigration detainees in segregation by facility by month
•The number of visits by medical health care providers to immigration detainees in housed in segregation by facility by month
•The number of transfers to an external medical and/or psychiatric facility and length of stay in the external facility
•The percentage of detainees in segregation provided access to showers and other basic services by facility by month
•The percentage of detainees granted access to regular outside visits
•The difference between medical and mental health care provided to those in segregation vs. those who are not
•Any written policies related to segregation
[22] These included:
•Copies of segregation reports, memoranda, training materials, policy guidance, and/or notifications regarding segregation that are created, collected, disseminated or received by ICE personnel including personnel in the Custody Management Division, ERO Field Office Directors, Detention Monitoring Council, and by the Segregation Review Coordinator regarding segregation placements
•Written reports including memos, and/or other documents created by FODs regarding any findings and/or actions taken regarding detainees with disabilities, medical or mental illness, or other special vulnerability such as gender identity or sexual orientation placed in segregation

by ICE, the Detention Monitoring Council, and the Office of Detention Policy and Planning related to solitary confinement.

58.     ICE FOIA Request 3 sought information regarding sexual abuse in facilities, LGBT detainees, and solitary confinement related to special vulnerabilities.[23]

### 2.     ICE's Failure to Respond to the ICE FOIA Requests

59.     On February 26, 2018, ICE consolidated the three FOIA requests into one file and assigned FOIA number 2018-ICFO-21128 to the request (the "Consolidated ICE FOIA Request"). [Exhibit L].

60.     On March 20, 2018 and April 6, 2018, ICE asked for clarification on the Consolidated ICE FOIA Request, which HIRC provided on April 1, 2018 and April 8, 2018, respectively [Exhibit M].

---

•Copies of reports by the Detention Monitoring Council of DMC subcommittees with data regarding the numbers of detainees held in segregation, the number held in extended segregation placements and/or the number who have segregation placements related to disability, medical or mental illness, suicide risk, hunger strike, status as a victim of sexual assault or other special vulnerability
•Records and/or reports (including memos, guidance letters, training materials, notifications, and other reports) generated from the quarterly meetings of the DMC on the use of segregation in ICE detention facilities and ICE contracting detention facilities
•Records and/or reports (including memos, guidance letters, training materials, notifications, and other reports) generated by the Office of Detention Policy and Planning in its review of segregation placements
•Records, data, and/or reports regarding the use of segregation in ICE detention facilities and ICE contracting detention facilities, broken down by facility
•Records, data, and/or reports regarding resources and capabilities for ICE detainees at ICE detention facilities and ICE contracting detention facilities
[23] These included:
•Records, data and/or policies implemented pursuant to the Prison Rape Elimination Act of 2003 and the Standards To Prevent, Detect, and Respond to Sexual Abuse and Assault in Confinement Facilities issued by DHS including oversight procedures, policy memoranda, training materials, or reports created or data collected that address sexual abuse in facilities used to detain individuals for immigration purposes, including any data or reports specific to LGBT detainees
•Records collected pursuant to the 2015 Transgender Care Memorandum
•Records, data, and/or reports that pertain to the demographics of the transgender detainee population
•Records, data, and/or reports of the available placements for transgender detainees
•Records of ERO LGBTI Field Liaisons and National ERO LGBTI Coordinator
•Records, data, and/or reports pertaining to immigration detainees who identify as transgender held in segregation including but not limited to data collected by EAGLE, EARM, RCA, and other relevant ICE information technology systems
•Records, data, and/or reports of instances in which transgender detainees were placed in segregation
•Records of segregation placements related to special vulnerability

61.     On November 21, 2018, ICE indicated that responsive records for the Consolidated ICE FOIA Request had been located, were being reviewed for releasability, and would be processed soon [Exhibit N].

62.     Nothing was ever produced.

**3.     Consolidated ICE FOIA Request Appeal**

63.     On April 16, 2019, HIRC filed an appeal in relation to the Consolidated ICE FOIA Request with ICE's Office of Principal Legal Advisor.

64.     A true and accurate copy of HIRC's appeal in relation to the Consolidated ICE FOIA Request is attached as Exhibit O.

65.     On April 25, 2019, ICE sent an acknowledgment letter to HIRC (the "ICE Acknowledgement Letter"), acknowledging that HIRC's appeal was transmitted on April 16, 2019 and received on April 24, 2019.

66.     A true and accurate copy of the ICE Acknowledgment Letter is attached as Exhibit P.

67.     On May 22, 2019, the Government Information Law Division of the ICE Office of Principal Legal Advisor remanded the appeal to the ICE FOIA office due to time and resource constraints (the "Remand Letter"). The Remand Letter indicated that the appeal was being remanded "to the ICE FOIA Office so that they [could] complete the search for [the records in dispute] and provide a direct response to [HIRC]."

68.     A true and accurate copy of the Remand Letter is attached as Exhibit Q.

69.     As of the date of this complaint—more than 2 years after the remand—HIRC has not received any communication from ICE in relation to the Consolidated ICE FOIA Request appeal.

D.      **OSC FOIA REQUEST**

1.      **Background**

70.     On December 21, 2017, HIRC submitted the OSC FOIA Request for certain records regarding complaints and/or claims filed with and/or investigations by OSC related to the use and/or substantive impact of segregation of civil immigration detainees.[24]

71.     A true and accurate copy of the OSC FOIA Request is attached at Exhibit R.

72.     As is relevant to this Complaint, OSC provided a response on May 19, 2020, in which it identified 2,735 responsive pages. Of the 2,735 pages, OSC referred 1,593 pages to DHS for direct response to HIRC.

73.     A true and accurate copy of the response is attached at Exhibit S.

2.      **DHS's Failure to Respond to the OSC FOIA Request Referral**

74.     On May 19, 2020, OSC indicated that it had referred 1,593 pages related to the OSC FOIA Request to DHS for direct response to HIRC.

75.     HIRC received no communication or response from DHS in relation to the referred pages of the OSC FOIA Request for over one year.

76.     On July 6, 2021, HIRC sent DHS an email to inquire the status of the referral. DHS Privacy Office responded the following day and stated that "the case [is] currently in our processing queue. It is very difficult to provide an accurate estimated date of completion until

---

[24] Specifically, the OSC FOIA Request sought "any and all records created on and/or after September 4, 2013…related to any complaints about the use and/or substantive impact of segregation of civil immigration detainees, including, but not limited to:
1.  Any complaints with and/or investigations by the Disclosure Unit;
2.  Any and all records and responses related to any complaints and/or investigations;
3.  Any and all records used to prepare any responses, memoranda, or reports related to segregation of civil immigration detainees;
4.  Any and all records related to the Special Counsel's "determination as to the completeness and apparent reasonableness" of any and all agency reports on solitary confinement of civil immigration detainees; and
5.  Any and all OSC communications transmitted to any other agencies or branches of government, including, but not limited to the DHS Office of the Secretary, the President, Congressional oversight committees [of] the U.S. House and Senate."

our FOIA analyst reviews these records." However, DHS Privacy Office said that it expected it would take "three to four months" to respond to the request [Exhibit T].

77.    DHS Privacy Office also sent HIRC an acknowledgement letter dated July 7, 2021 (the "DHS Acknowledgment Letter"), which noted receipt of the OSC FOIA request on October 21, 2020, and assigned case number 2020-HQFO-01140 to the referred pages.

78.    A true and accurate copy of the DHS Acknowledgement Letter is attached as Exhibit U.

79.    The DHS Acknowledgement Letter stated that "[d]ue to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request" and that due to the unusual circumstances of the request, "DHS will invoke a 10-day extension".

80.    DHS received the referral request over 1 year ago.  DHS has not responded further.

## FIRST CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(a)(3) For
### Failure to Produce Responsive Records

81.    HIRC incorporates each of the foregoing paragraphs of this Complaint.

82.    Pursuant to FOIA, 5 U.S.C. § 552(a), HIRC has a statutory right to access requested agency records.

83.    Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(A), Defendants must "make the records [requested] promptly available" to requesters.

84.    Pursuant to FOIA, 5 U.S.C. § 552(a)(3)(C), Defendants must "make reasonable efforts to search" for the information requested.

85.    Upon information and belief, Defendants possess records responsive to the OIG and CRCL FOIA Request that they have failed to produce without justification.

86.     Upon information and belief, ICE possesses records responsive to the Consolidated ICE FOIA Request that it has failed to produce without justification.

87.     Upon information and belief, Defendants' failure to produce responsive records is a result of their failure to make reasonable efforts to search for the information requested.

88.     Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly withh[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

## SECOND CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(a)(6)(A)(ii) For
### Failure to Comply With Statutory Deadlines

89.     HIRC incorporates each of the foregoing paragraphs of this Complaint.

90.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i)-(ii), Defendants had 20 business days from receipt of each FOIA request to provide an adequate response.

91.     Further, agencies receiving FOIA record referrals should ensure that the requester is not disadvantaged by the timing of the process and should handle the referral in order of the initial date of receipt of the request by the referring agency—not the date of the referral itself. *See* U.S. Dep't of Justice, FOIA Update, Vol. XV, No. 3, at 6 (observing that a requester should "receive her rightful place in line as of the date upon which her request was received." (citing *Freeman v. Dep't of Justice*, 822 F. Supp. 1064, 1067 (S.D.N.Y. 1993).

92.     On November 21, 2017, HIRC submitted the OIG and CRCL FOIA Request to ICE, containing the OIG Request and the CRCL Request.

93.     On February 21, 2018, ICE transferred the OIG Request to DHS OIG and mistakenly transferred the CRCL Request to the DHS Privacy Office, which then re-transferred the CRCL Request back to ICE two days later.

94.     On December 10, 2018, DHS OIG responded to the OIG Request and referred 221 pages to ICE to review and respond directly to HIRC.

95.     As of the date of this complaint, HIRC has not received any communications or records from ICE in relation to the 221 pages responsive to the OIG Request that were referred back to ICE by DHS OIG for direct response to HIRC.

96.     As of the date of this complaint, HIRC has also not received any records from ICE in relation to the CRCL Request.

97.     Accordingly, ICE has failed to respond to the OIG and CRCL FOIA Request, including both the CRCL Request and the referral from DHS OIG in relation to the OIG Request within the time limits prescribed by FOIA, 5 U.S.C. § 552(a)(6)(A)(i)-(ii).

98.     On November 30, 2017, HIRC submitted three FOIA Requests to ICE, which ICE subsequently consolidated into one request.

99.     Despite an appeal decision on May 22, 2019, asserting that the ICE FOIA office would complete its search and provide a response to the appeal, HIRC has not yet received these records.

100.     Accordingly, ICE has failed to respond to the Consolidated ICE FOIA Request within the time limits prescribed by FOIA, 5 U.S.C. § 552(a)(6)(A)(i)-(ii).

101.     On December 21, 2017, HIRC submitted the OSC FOIA Request. On May 19, 2020, OSC responded to the OSC FOIA Request and referred 1,593 pages to DHS for direct response to HIRC.

102.     On July 7, 2021, DHS acknowledged receipt of the referral and noted that it could not estimate a timeframe in which it could review and respond to the referral, but expected it to take another three to four months.

103.     Because Defendants have failed to comply with the requirements to respond as set forth in 5 U.S.C. § 552(a)(6)(A)(i)-(ii), HIRC has constructively exhausted its administrative remedies and is entitled to proceed with this judicial action pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

104.     Under 5 U.S.C. § 552(a)(4)(B), when an agency "improperly withh[o]ld[s]" records, this Court may "enjoin the agency from withholding agency records" and "order the[ir] production."

### THIRD CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(b)(5) For
### Improperly Withholding Records under FOIA Exception 5

105.     HIRC incorporates each of the foregoing paragraphs of this Complaint.

106.     DHS OIG invoked deliberative process privilege 5 U.S.C. § 552(b)(5) to withhold three pages of records believed to be responsive from HIRC, without necessary explanation or segregating these records.

107.     However, "the government must explain, for each withheld record, at least, (1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 101 (D.D.C. 2019).

108.     5 U.S.C. § 552(b) further provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

## FOURTH CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(b)(6) For
### Improperly Withholding Records under FOIA Exception 6

109.    HIRC incorporates each of the foregoing paragraphs of this Complaint.

110.    DHS OIG improperly withheld nonexempt information by invoking U.S.C. § 552(b)(6) in overly broad terms.

111.    5 U.S.C. § 552(b)(6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

112.    DHS OIG instead overbroadly invoked 5 U.S.C. § 552(b)(6) to withhold "the names of third parties and any information that could reasonably be expected to identify such individuals" without specific explanation of the privacy interests at stake. [Exhibit G].

## FIFTH CAUSE OF ACTION

### Violation of 5 U.S.C. § 552(b)(7)(C) For
### Improperly Withholding Records under FOIA Exception 7(C)

113.    HIRC incorporates each of the foregoing paragraphs of this Complaint.

114.    DHS OIG improperly withheld nonexempt information by invoking 5 U.S.C. § 552(b)(7)(C) in overly broad terms.

115.    5 U.S.C. § 552(b)(7)(C) exempts records or information compiled for law enforcement purposes to the extent that their production "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

116.    DHS OIG instead overbroadly invoked 5 U.S.C. § 552(b)(7)(C) to "protect the identities of third parties, and any information contained in these investigative records that could reasonably be expected to identify those individuals." [Exhibit G].

## PRAYER FOR RELIEF

WHEREFORE, HIRC respectfully requests that this Court enter a judgment for HIRC and award the following relief:

117.    Injunctive relief, ordering ICE to respond to the Consolidated ICE FOIA Request, by a date certain, by

(a) conducting a search using "reasonable effort[s]" "for the purpose of locating those records which are responsive" to the Consolidated ICE FOIA Request, as required by 5 U.S.C. §§ 552(a)(3)(C)-(D);

(b) demonstrating that it has conducted an adequate search;

(c) producing to HIRC all non-exempt records or portions of records responsive to the Consolidated ICE FOIA Request, as well as a Vaughn index of any records or portions of records withheld due to a claim of exemption; and

(d) precluding Defendant ICE from withholding the requested records;

118.    Injunctive relief, ordering ICE to process the 221 pages responsive to the OIG Request and to respond to the CRCL Request, by a date certain, by

(a) conducting a search using "reasonable effort[s]" "for the purpose of locating those records which are responsive" to the CRCL Request, as required by 5 U.S.C. §§ 552(a)(3)(C)-(D);

(b) demonstrating that it has conducted an adequate search;

(c) producing to HIRC all non-exempt records or portions of records responsive to the OIG and CRCL FOIA Request, as well as a Vaughn index of any records or portions of records withheld due to a claim of exemption; and

(d) precluding Defendant ICE from withholding the requested records;

119.    Injunctive relief, ordering DHS OIG to release any improperly withheld

nonexempt information in the responsive records to the OIG Request, by a date certain, by

(a) producing to HIRC all non-exempt records or portions of records responsive to the

OIG Request, as well as a Vaughn index of any records or portions of records withheld

due to a claim of exemption; and

(b) precluding Defendant DHS from withholding the requested records;

120.    Injunctive relief, ordering DHS to process and produce the 1,593 pages referred to

DHS for direct response from OSC in relation to the OSC FOIA Request, by a date certain, by

(a) producing to HIRC all non-exempt records or portions of records responsive to the

OSC FOIA Request that were referred to DHS, as well as a Vaughn index of any records

or portions of records withheld due to a claim of exemption; and

(b) precluding Defendant DHS from withholding the requested records;

121.    Award HIRC its costs and attorney fees reasonably incurred in this action,

pursuant to 5 U.S.C. § 552(a)(4)(E); and

122.    Grant HIRC such other and further relief as the Court may deem just and proper.

Dated: December 13, 2021                     Respectfully submitted,

                                             /s/ Sabrineh Ardalan
                                             Sabrineh Ardalan (BBO #706806)
                                             Philip L. Torrey (BBO # 736506)
                                             Michael Shang, Law Student
                                             George Biashvili, Law Student
                                             HARVARD IMMIGRATION AND
                                             REFUGEE CLINICAL PROGRAM,
                                             HARVARD LAW SCHOOL
                                             6 Everett Street, Wasserstein 3103
                                             Cambridge, Massachusetts 02138
                                             Telephone: (617) 384-7504
                                             sardalan@law.harvard.edu
                                             ptorrey@law.harvard.edu

David Bitkower
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6048
dbitkower@jenner.com
(*pro hac vice motion forthcoming*)

Amanda Azarian
JENNER & BLOCK LONDON LLP
25 Old Broad Street
London EC2N 1HQ
Tel: +44 (330) 060-5405
aazarian@jenner.com
(*pro hac vice motion forthcoming*)